IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VDF FutureCeuticals, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 11-00288 ACK-RLP |
| | ) |
| Sandwich Isles Trading Co., | ) |
| Inc., d/b/a/ Kona Red, Inc., et | ) |
| al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS IN PART DEFENDANT'S COUNTERCLAIM

### I. FACTUAL AND PROCEDURAL BACKGROUND[1/]

Plaintiff VDF FutureCeuticals, Inc. ("VDF") filed a complaint against Sandwich Isles Trading Co., Inc., d/b/a/ Kona Red, Inc. ("Sandwich Isles"). (Compl., ECF No. 1.) VDF alleges that it "is the assignee and owner of all rights, title and interest" in three United States patents: No. US 7,754,263 ("the '263 Patent"); No. US 7,807,205 ("the '205 Patent"); and No. US 7,815,959 ("the '959 Patent"). (Id. ¶¶ 10-12.) VDF alleges that it "has marketed, sold, and continues to market and sell, the patented product and products made from the patented processes

_____

[1/] The facts as recited in this order are for the purpose of disposing of this motion and are not to be construed as findings of fact or conclusions of law that the parties may rely on in future proceedings.

-1-

under the trademark "COFFEEBERRY®." (Id. ¶ 14.)  The complaint

contains counts involving infringement of the '263 Patent, the

'205 Patent, and the '959 Patent. (Id. ¶¶ 19–35.)  It does not

contain counts involving trademark infringement.

Sandwich Isles filed a counterclaim, portions of which

the instant motion to dismiss challenges. (Countercl., ECF No.

15-1.)  The motion to dismiss argues that several counts of the

counterclaim are insufficiently pleaded.  This order will

therefore describe the factual allegations of the counterclaim in

the discussion below.

The counts in the counterclaim are as follows:

Count I seeks a declaration that Sandwich Isles has not

infringed the patents-in-suit.  VDF has not sought to dismiss

this count.

Count II seeks a declaration that the '205 Patent is

invalid or unenforceable, on several grounds.  VDF seeks to

dismiss this count to the extent that it alleges that the patent

is unenforceable as a result of "inequitable and deceptive

conduct" or "misuse," on the grounds that such claims are

insufficiently pleaded.  VDF does not seek to dismiss this count,

however, to the extent that it challenges the patent on the

grounds of lack of novelty, obviousness, or lack of specificity.

Count III seeks a declaration that VDF does not have

provisional rights under 35 U.S.C. § 154(d) dating back to the

publication dates of the relevant patent applications.  VDF does not seek to dismiss this count.

Count IV seeks a declaration that VDF's trademark registrations are invalid.  VDF seeks to dismiss this count on the grounds that there is no actual case or controversy between Sandwich Isles and VDF concerning VDF's trademarks.

Count V seeks cancellation of VDF's trademark registrations under 15 U.S.C. § 1119.  VDF seeks to dismiss this count on the grounds that there is no pending "action involving a registered mark" as is required for courts to cancel trademark registrations under § 1119.

Counts VI, VII, and VIII are affirmative claims under Hawaiʻi state law for, respectively, "tortious interference with existing contracts and prospective business advantage"; "unfair methods of competition in violation of Haw. Rev. Stat. § 480-2"; and "unfair and deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3."  VDF seeks to dismiss each of these claims on the grounds that they are preempted by federal law and, to the extent they are not preempted, that they are insufficiently pleaded.

## II. STANDARD OF REVIEW

### A.        Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of a complaint that fails "to state

a claim upon which relief can be granted."  Under Rule 12(b)(6),
review is generally limited to the contents of the complaint.
<u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.
2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir.
1996).  Courts may also "consider certain materials—documents
attached to the complaint, documents incorporated by reference in
the complaint, or matters of judicial notice—without converting
the motion to dismiss into a motion for summary judgment."
<u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).
Documents whose contents are alleged in a complaint and whose
authenticity is not questioned by any party may also be
considered in ruling on a Rule 12(b)(6) motion to dismiss.  <u>See</u>
<u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994), <u>overruled</u>
<u>on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d
1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations
of material fact are taken as true and construed in the light
most favorable to the nonmoving party.  <u>Fed'n of African Am.</u>
<u>Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir.
1996).  However, conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient
to defeat a motion to dismiss.  <u>See</u> <u>Sprewell</u>, 266 F.3d at 988;
<u>Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of</u>
<u>Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex</u>

-4-

<u>Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover,
the court need not accept as true allegations that contradict
matters properly subject to judicial notice or allegations
contradicting the exhibits attached to the complaint.  <u>Sprewell</u>,
266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to
dismiss, "[f]actual allegations must be enough to raise a right
to relief above the speculative level . . . on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
555 (2007) (internal citations and quotations omitted).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations . . . a plaintiff's obligation
to provide the 'grounds' of his 'entitlement to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  <u>Id.</u> (internal
citations and quotations omitted).  Dismissal is appropriate
under Rule 12(b)(6) if the facts alleged do not state a claim
that is "plausible on its face."  <u>Id.</u> at 570.  "Determining
whether a complaint states a plausible claim for relief
will . . . be a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense."
<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009) (citation
omitted).  "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted). "But courts have discretion to deny leave to amend a complaint for futility, and futility includes the inevitability of a claim's defeat on summary judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir.1987) (citations and internal quotation marks omitted).

**B.** **Motion to Dismiss under Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires the pleading to provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)(internal quotation marks omitted). In other words, "[a]verments of fraud must be accompanied by the 'who, what, when where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d

1097, 1106 (9th Cir. 2003).  Plaintiffs "must set forth what is
false or misleading about a statement, and why it is false."
Ebeid ex rel. U.S. v. Lunqwitz, 616 F.3d 993, 998 (9th Cir.
2010).

        "A motion to dismiss a claim 'grounded in fraud' under
Rule 9(b) for failure to plead with particularly is the
functional equivalent of a motion to dismiss under Rule
12(b)(6)."  Vess, 317 F.3d at 1107.  Thus, "[a]s with Rule
12(b)(6) dismissals, dismissals for failure to comply with Rule
9(b) should ordinarily be without prejudice.  Leave to amend
should be granted if it appears at all possible that the
plaintiff can correct the defect."  Id. (alterations and internal
quotation marks omitted).

### III. DISCUSSION

### A.        Inequitable Conduct

        Count II of Sandwich Isles's counterclaim seeks a
declaration that the '205 Patent is invalid or unenforceable for
several reasons, including "VDF's inequitable and deceptive
conduct in the prosecution of the '205 Patent Application before
the USPTO."  VDF's motion to dismiss asserts that this portion of
Count II is insufficiently pleaded.

        In Therasense, Inc. v. Becton, Dickinson & Co., 649
F.3d 1276 (Fed. Cir. 2011) (en banc), the Federal Circuit
determined that "the inequitable conduct doctrine has plagued not

only the courts but also the entire patent system," and the court therefore "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." Id. at 1289-90.

The Federal Circuit has since summarized its holding in Therasense as follows: "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." Am. Calcar, Inc. v. Am. Honda Motor Co., 651 F.3d 1318, 1334 (Fed. Cir. 2011) (citing Therasense, 649 F.3d at 1287). The court continued: "Under Therasense, the materiality required to establish inequitable conduct is, in general, but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id. (citing Therasense, 649 F.3d at 1291). The court stated that "[w]hile deceptive intent can be inferred from indirect and circumstantial evidence, that 'inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'" Id. at 1334 (quoting Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)). The court concluded that

"[i]n a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference."  Id. (emphasis in original) (quoting Therasense, 649 F.3d at 1289).

The Theransense court emphasized that "[i]ntent and materiality are separate requirements," and that a "district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."  649 F.3d at 1290.  The court continued:

> Moreover, a district court may not infer intent solely from materiality.  Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.

Id.

The Therasense court preserved an "exception [to the materiality prong of inequitable conduct] in cases of affirmative egregious misconduct."  649 F.3d at 1292 ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material.").  The exception covers all "affirmative egregious acts," and is not limited to "the example provided—the filing of an unmistakably false affidavit."  Id. at 1293.  The court noted

the roots of the inequitable conduct doctrine in "early unclean hands" cases from the Supreme Court, which involved "perjury and suppression of evidence"; "manufacture and suppression of evidence"; and "bribery and suppression of evidence."  Id.  But "neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, [so] claims of inequitable conduct that are based on such omissions require proof of but-for materiality."  Id. at 1292-93.

"Therasense does not address the initial pleading stage nor does it suggest that a challenger could never plead a claim of inequitable conduct."  Jersey Asparagus Farms, Inc. v. Rutgers Univ., Civil No. 10-2849 (FLW), 2011 WL 2148631, at *14 (D.N.J. May 31, 2011).  The Federal Circuit has recently stated that "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO."  Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing Exergen v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1318, 1330 (Fed. Cir. 2009); citing generally Therasense).  The Delano Farms court held that a complaint was sufficient to plead inequitable conduct

where there had been "widespread prior use of the patented [grape] varieties," and where, from the allegations in the complaint, "a reasonable jury could infer that [a co-inventor] knew of the prior use, appreciated that the prior use was material, and decided not to disclose that information to the PTO, with deceptive intent." <u>Id.</u>

Similarly, a district court in the Eastern District of Virginia has recently determined that "<u>Exergen</u> still states the correct elements required for pleading inequitable conduct after <u>Therasense</u>." <u>Pfizer Inc. v. Teva Pharm. USA, Inc.</u>, Civil No. 2:10cv128, 2011 WL 3563112, at *16 (E.D. Va. Aug. 12, 2011). Specifically, the court determined that "[a] party must still 'identify the specific who, what, when, where, and how of the material misrepresentation or omission committed.'" <u>Id.</u> (citing <u>Exergen</u>, 575 F.3d at 1328); <u>see also</u> <u>Exergen</u>, 575 F.3d at 1326 (holding that claims of inequitable conduct must be pleaded with particularity under Rule 9(b)). "[A]dditionally, a party must allege intent to deceive the PTO, such that the specific intent is plausible from the facts alleged." <u>Pfizer</u>, 2011 WL 3563112, at *16. The court noted, however, that "after <u>Therasense</u>, a mere recitation that 'X' individual, at 'X' time, failed to turn over 'X' information to the PTO that would have been material to the prosecution, with the specific intent to deceive the PTO, is insufficient." <u>Id.</u> "Instead, in alleging those elements, a

party must make an initial showing from which it may be plausibly inferred that: (1) the individual knew of the information not disclosed; (2) the information not disclosed was but-for material to the prosecution of the patent; and (3) the intent to deceive is the single most likely explanation for the non-disclosure." Id. The court noted that it was "mindful that at the pleading stage a party is not required to meet the clear and convincing evidence standard that applies on the merits," but also that under Therasense, "courts must take an active role in examining the propriety of inequitable conduct claims," which courts cannot do without "allegations of the specific elements to be proven." Id.

Another court, this one in the Northern District of California, recently acknowledged Therasense's determination that "the doctrine of inequitable conduct has become overplayed and has 'plagued' both the courts and the patent system." Oracle Corp. v. DrugLogic, Inc., No. C 11-00910 JCS, 2011 WL 3443889, at *13 (N.D. Cal. Aug. 8, 2011). But the court concluded that Therasense "did not foreclose all inequitable conduct claims," and that "[i]t would be inappropriate at the motion to dismiss stage to hold that [a party] cannot plead inequitable conduct based on a case that addressed the heightened standards not for pleading but for proving the elements of such a claim." Id. ("The court in Therasense did not address inequitable conduct at

-12-

the motion to dismiss stage and did not discuss leave to amend.").

With these standards in mind, the Court now turns to the allegations in Sandwich Isles's counterclaim. The allegations related to the claim of inequitable conduct are contained in paragraphs 44-53 of the counterclaim. Specifically, the counterclaim alleges that VDF's final submission to the PTO concerning the '205 Patent took place on July 14, 2010, when "VDF . . . cancelled claims 1-20 of the '205 Patent Application, replaced them with newly added claims 21-39, and argued that the prior rejections by the USPTO were thereby rendered moot." (Id. ¶ 50.) The counterclaim alleges that this submission was "materially misleading and deceptive" in that "the newly added claims disclosed a method involving comminuting whole coffee cherries '<u>or portions thereof</u>'" where the previously allowed claims in the '263 Patent "disclosed a method for processing <u>whole</u> coffee cherries." (Id. ¶¶ 51-52 (emphasis added).) The difference between claims involving whole coffee cherries and partial coffee cherries is material, according to the counterclaim, because the PTO had previously rejected claims involving partial coffee cherries based on prior art, and VDF had

sought to distinguish its claims from the prior art based on the use of the whole fruit in the '205 Patent.[2/]  (Id. ¶¶ 45-48.)

The Court finds that the allegations in the counterclaim neither plead with particularity that any actor had a specific intent to deceive the PTO nor give rise to a plausible inference that the intent to deceive was the single most likely explanation for any statement.

The "Remarks/Arguments" section of VDF's July 14, 2010, submission to the PTO focuses primarily on mycotoxins rather than on a distinction between whole and partial coffee cherries. (Countercl. Ex. 10.)  The submission states that "mycotoxins are known to be associated with coffee fruit," but that "much of the anlysis in the literature is focused on mycotoxins in/on the bean."  (Id.)  It further states that the prior art cited by the examiner either could not achieve "the claimed limits on . . . specific mycotoxins" or was "entirely silent on the issue of any mycotoxins in extracts."  (Id.)  There is no discussion in the July 14 submission attempting to distinguish prior art based on the use of whole as opposed to partial coffee cherries.  In any event, the phrase "coffee cherries or portions thereof" appears

_____

[2/] At the hearing, VDF argued that any distinction between whole and partial fruit was immaterial, because while VDF had attempted to distinguish prior art on that basis, the PTO had not been persuaded by that attempt.

at least fifteen times in the three pages of claims.  (Countercl. Ex. 10.)

The counterclaim as it stands is insufficient to state a claim for inequitable conduct under the "tightened" standards set forth in <u>Therasense</u>.  The Court will therefore DISMISS Count II of Sandwich Isles's counterclaim to the extent that it claims that the '205 Patent is unenforceable due to inequitable conduct.

VDF argues that the inequitable conduct claim should be dismissed with prejudice, claiming that its attorney's arguments in favor of patentability cannot form the basis of an inequitable conduct claim.  The basis of VDF's position is that "[a] misrepresentation of material fact may give rise to a claim for inequitable conduct, however, an applicant's legal or interpretive arguments in favor of patentability are not actionable."  <u>Schwendimann v. Arkwright Advanced Coating, Inc.</u>, Civil No. 11-820 ADM/JSM, 2011 WL 4007334, at *4 (D. Minn. Sept. 8, 2011) (collecting cases, including <u>Rothman v. Target Corp.</u>, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct.")).

But not all arguments by attorneys are shielded from liability for inequitable conduct.  "An applicant's legal or interpretive arguments favoring patentability are not

misrepresentations if such arguments do not contain 'gross mischaracterizations or unreasonable interpretations' and are not 'demonstrably false.'" Id. (quoting <u>Young v. Lumenis, Inc.</u>,, 492 F.3d 1336, 1349 (Fed. Cir. 2007)). "On the other hand, if an applicant's legal or interpretive argument is based on distorted facts or is contrary to what a person of skill in the art would understand a reference to disclose, the interpretation exceeds the bounds of acceptable argument and may be subject to a claim for inequitable conduct." Id. (citing <u>Ring Plus, Inc. v. Cingular Wireless Corp.</u>, 614 F.3d 1354, 1360-61 (Fed. Cir. 2010); <u>Semiconductor Energy Lab Co. v. Samsung Elecs. Co.</u>, 204 F.3d 1368, 1376-78 (Fed. Cir. 2000).

While the counterclaim as it stands fails to sufficiently plead that VDF's attorney engaged in inequitable conduct, it is possible that Sandwich Isles might be able to state a claim. See <u>Schwendimann</u>, 2011 WL 4007334, at *4; <u>see generally</u> <u>Therasense</u>, 649 F.3d at 1292 (preserving an "exception [to the materiality prong of inequitable conduct] in cases of affirmative egregious misconduct," including but not limited to "the filing of an unmistakably false affidavit"); <u>but see</u> <u>Therasense</u>, 649 F.3d at 1292-93 ("[N]either mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious

misconduct, [so] claims of inequitable conduct that are based on such omissions require proof of but-for materiality.").

The Court, mindful of its obligation to grant leave to amend "if it appears at all possible that the plaintiff can correct the defect" in a claim that is insufficiently pleaded, will GRANT LEAVE for Sandwich Isles to file an amended counterclaim.

**B.**      **Patent Misuse**

Count II of the counterclaim also contains a contention that the '205 Patent is "unenforceable by reason of . . . VDF's misuse of the '205 Patent." (Countercl. ¶ 65.) VDF argues that this counterclaim is insufficiently pleaded.

According to the Federal Circuit, "[t]he doctrine of patent misuse is . . . grounded in the policy-based desire to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (internal quotation marks omitted). Therefore, "[i]t follows that the key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." Id. The court noted "the narrow scope of the doctrine," given that "the patentee begins with substantial

rights under the patent grant—'includ[ing] the right to suppress the invention while continuing to prevent all others from using it, to license others, or to refuse to license, . . . to charge such royalty as the leverage of the patent monopoly permits,' and to limit the scope of the license to a particular 'field of use.'" Id. (quoting U.S. v. Studiengesellschaft Kohle, m.b.H., 670 F.2d 1122, 1127, 1133 (D.C. Cir. 1981)).

The parties dispute whether claims of patent misuse must be pleaded with particularity under Rule 9(b). While the Federal Circuit does not appear to have determined what pleading standard applies, the Court agrees with several courts' holdings that to the extent a patent misuse claim rests on allegations of inequitable conduct, that claim must be pleaded with particularity under Rule 9(b). See, e.g., Appelera Corp. v. Mich. Diagnostics, LLC, 594 F. Supp. 2d 150, 163–64 (D. Mass. 2009); United Fixtures Co. v. Base Mfg., No. 6:08-cv-506-Orl-28GJK, 2008 WL 4550212, at *2–5 (M.D. Fla. Oct. 8, 2008); Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., No. C-95-3577 DLJ, 1996 WL 467293, at *13 (N.D. Cal. July 24, 1996). The case cited by Sandwich Isles, Matsushita Elec. Indus. Co. v. CMC Magnetics Corp., No. C 06-04538 WHA, 2006 WL 3290413, at *2 (N.D. Cal. Nov. 13, 2006), is not to the contrary because in that case the court found that the claim of patent misuse was supported by allegations that the patentee "impermissibly broadened the

-18-

physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." The <u>Matsushita</u> court did state that the patent misuse claim was also supported by "allegations from . . . other counterclaims which allege that Matsushita obtained its patents in suit through inequitable conduct," <u>id.</u>, but it is not clear from the order, which concerned only the patent misuse counterclaim, whether those other counterclaims were sufficiently pleaded under Rule 9(b). To the extent that the <u>Matsushita</u> decision might be read to imply that claims of patent misuse based on inequitable conduct need not be pleaded with particularity, the Court disagrees with that implication and instead follows the authorities cited previously.[3/]

As discussed above, the counterclaim insufficiently pleads that there was inequitable conduct in the prosecution of VDF's patents. Given the Court's determination that the inequitable conduct claim is insufficiently pleaded, so too is

_____

[3/] The Court notes that one other proposition in <u>Matsushita</u> appears to have been abrogated, at least in part. The decision states that "[t]he Federal Circuit has not stated that there is a finite list of patent misuse practices." 2006 WL 3290413, at *3. But in <u>Princo</u>, the Federal Circuit stated that "proof of an antitrust violation . . . does not establish misuse of a patent in suit unless the conduct in question restricts the use of that patent and does so <u>in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant</u>." 616 F.3d at 1329 (emphasis added).

the patent misuse claim to the extent that it relies on inequitable conduct.

What remains, if anything, are the contents of the November 3, 2009, letter from VDF's counsel to XOWii, LLC, and the broad allegation in paragraph fifty-four of the counterclaim. As to the first, the letter merely "draws [the recipient's] attention to" 35 U.S.C. § 154(d), which provides that a "patent shall include the right to obtain a reasonable royalty" from an infringer of an ultimately issued patent who "had actual notice of the published patent application." Id. § 154(d)(1). The statute specifically conditions the right to obtain a royalty to situations where "the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application." Id. § 154(d)(2). Sandwich Isles argues that the letter constitutes misuse because at the time that the letter was sent, the claims in the patent application had already been amended, such that VDF had no prospect of obtaining royalties dating back to the original filing of the application. But the letter contains no representation to the contrary; all the letter does is cite a statute and relay one of that statute's provisions.

At the hearing, the parties disputed the impact of Stephens v. Tech Int'l, Inc., 393 F.3d 1269 (Fed. Cir. 2004). In that case, the Federal Circuit, in addressing a similar letter

notifying a potential infringer of the potential for reasonable royalties under 35 U.S.C. § 154(d), stated that "[t]he letter represented [the patent applicant's] adherence to section 154's requirement that [the potential infringer] be placed on notice of [the applicant's] future right to obtain royalties if a patent issued in a form substantially identical to the published [patent] application." Id. at 1276. The court continued by stating that:

> [The applicant] did not harass [the potential infringer] by sending the section 154 notice while the [patent] application was being amended. The application was actually amended after the section 154 notice was sent to [the potential infringer]. Further, [the applicant] was not required to withdraw its section 154 notice; it believed [the potential infringer] still infringed the amended claims, and had a right to await possible patent issuance to see if its infringement allegations were correct."

Id.

The Court notes that Stephens has different factual circumstances from this case because in Stephens, the amendments were made after the section 154 notice was sent to the potential infringer, whereas in this case, amendments had been made before the section 154 notice was sent. The Court does not find this difference material. The letter references the identification numbers for the patent applications, and the parties do not dispute that XOWii could have used those identification numbers to determine whether any amendments had been filed since the

applications had been published (as could any member of the public).  The letter, standing alone, does not give rise to a plausible inference that VDF was misusing any patent.  <u>Cf.</u> <u>First Years, Inc. v. Munchkin, Inc.</u>, No. 07-cv-558-bbc, 2008 WL 4283122, at *2 (W.D. Wis. Sept. 17, 2008) ("[Section] 154(d) requires no more than 'actual notice of the published patent application.'"); <u>Arendi Holding Ltd. v. Microsoft Corp.</u>, Civ. No. 09-119-JJF-LPS, 2010 WL 1050177, at *8 (D. Del. Mar. 22, 2010) (noting that <u>First Years</u> referred to "<u>just</u> the application, not the application and thousands of other documents").  Notably, the letter does not assert that XOWii will actually be liable once the patents issue.  <u>Cf.</u> <u>GEA Westfalia Separator, Inc. v. Greenshift Corp.</u>, No. 09-Civ. 7686(LMM), 2010 WL 2076951, at *4 (S.D.N.Y. May 17, 2010) (determining that a complaint "adequately allege[d] falsity" where a letter stated that the recipient would be "liable under 35 U.S.C. § 154(d) once these patent applications issue," even though the claims in the patent, as granted, were not substantially identical to the claims in the published application).

        The counterclaim also contains an allegation that "at or about the time VDF filed its Complaint in this action on April 29, 2011, VDF contacted existing and/or potential customers of SITC and threatened to sue them for patent infringement if they continued or agreed to do business with SITC, including the

national distributor of the nutritional supplement 'Juice Plus+,' who has not agreed to consummate negotiations with SITC to buy SITC's products in view of VDF's threats." (Countercl. ¶ 54.) This allegation does not suffice to make out a claim for patent misuse under either Rule 8(a) or Rule 9(b); there is nothing in the allegation to suggest how, if at all, the contacts made by VDF to Sandwich Isles's existing or potential customers involved claims that would have "impermissibly broadened the physical or temporal scope of the patent grant." <u>See</u> 35 U.S.C. § 271(d)(3) ("No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having . . . sought to enforce his patent rights against infringement or contributory infringement."). The Federal Circuit has stated:

> [The patentee's] practices did not constitute patent misuse because they did not broaden the scope of its patent, either in terms of covered subject matter or temporally. That [the patentee] sent infringement notices . . . , even notices that threatened suit and injunctions, did not indicate that VP attempted to broaden its patent monopoly. . . . A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers. Accordingly, a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of

> liability and/or the imposition of an
> injunction.

Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) (citation and internal quotation marks omitted).

In short, the counterclaim fails to allege that VDF has "impermissibly broadened the physical or temporal scope of the patent grant . . . in a manner that has anticompetitive effects." Princo, 616 F.3d at 1328. The counterclaim therefore fails to state a claim for patent misuse. Count II is DISMISSED to the extent that it claims that the '205 Patent is unenforceable due to patent misuse.

## C.        Counterclaims Involving the COFFEEBERRY® Mark

The Counterclaim contains two counts concerning VDF's COFFEEBERRY® trademark. Count IV seeks a declaration that the mark is generic, descriptive, and nondistinctive. (Countercl. ¶¶ 71-76.) Count V seeks cancellation of VDF's trademark registrations under 15 U.S.C. § 1119. (Id. ¶¶ 77-83.)

VDF argues that the Court lacks jurisdiction over both of these claims. The Court agrees.

"[C]ourts may adjudicate only actual cases or controversies." Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (citing U.S. Const. art. III, § 2, cl. 1.) As the Supreme Court restated in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), "the question in each case is whether the facts alleged, under all the circumstances, show that there

is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> at 127 (quoting <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).

In this case, the pleadings reflect that VDF has sought to assert its trademark against another company's use of the phrase "coffee berry," (Countercl. Ex. 4), and Sandwich Isles has alleged that "[s]ince at least as early as 2008, SITC, directly or through its affiliates, has been marketing and/or selling in interstate commerce coffee berry products." (Countercl. ¶ 11.) But there are no allegations that Sandwich Isles itself has ever used, or has any intention to use, the phrase "coffee berry" in selling or marketing its products. (<u>Cf.</u> Countercl. Ex. 4 (referring to Sandwich Isles's marketing of its product as the noninfringing "KonaRed Coffee Fruit"); Compl. ¶ 3 (alleging that Sandwich Isles's products are marketed as "'KonaRed Wellness Beverages,' including '3oz Concentrated Shots,' 'RTD [Ready to Drink] 16oz Beverages,' and 'Convenient, on-the-go Stick Packs,'"); <u>id.</u> ¶ 5 (alleging that Sandwich Isles also offers a "whole powder and a liquid extract containing 'KonaRed Coffee Fruit,'"); Answer ¶¶ 3, 5 (admitting these allegations).)

Nor does the record reflect any threat of action against Sandwich Isles based on VDF's trademarks that might give rise to a reasonable apprehension of liability. The complaint

mentions the trademarks only in the context of an allegation that "VDF has marketed, sold, and continues to market and sell, the patented product and products made from the patented processes under the trademark 'COFFEEBERRY®.'" (Compl. ¶ 14.) The statement in the opposition that VDF's letter to XOWii "assert[ed] potential liability based on SITC's use of 'KonaRed Coffee Fruit" is incorrect; the letter identifies "KonaRed Coffee Fruit" as a noninfringing term and contrasts it with XOWii's use of the terms "coffee berry" and "KonaRed Coffee Cherry." (Countercl. Ex. 4.) Moreover, the letter does not give rise to a reasonable apprehension of potential contributory infringement liability because there is nothing in the letter to indicate that VDF suspected Sandwich Isles of contributing in any way to XOWii's choices in marketing its products.

At the hearing, Sandwich Isles's counsel argued that the Court could infer, from the company's use of the term "coffee fruit" to describe its products, that the company would actually prefer to use the term "coffee berry" and only has only chosen to use the term "coffee fruit" based on threats of trademark-infringement litigation made by VDF. The Court finds this argument speculative. If Sandwich Isles's intent to use the term "coffee berry" in marketing its products has been thwarted by VDF's trademarks, then Sandwich Isles should be able to affirmatively state allegations to that effect.

As VDF's counsel conceded at the hearing, such allegations might be sufficient to allege a case or controversy such that this Court would have jurisdiction under Article III. But the allegations in the complaint and the counterclaim, as they stand, do not, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune</u>, 549 U.S. at 127. The court therefore lacks jurisdiction over the claim for declaratory judgment because there is no case or controversy concerning VDF's trademarks. <u>See</u> <u>Malava, LLC v. Innovative Grp. Holdings, Inc.</u>, No. 09cv173 WQH (WVG), 2010 WL 4868024, at *2-3 (S.D. Cal. Nov. 22, 2010) (holding that even where a party had "previously used" a mark, and a trademark infringement action had been filed, there was no case or controversy sufficient to support a declaratory judgment action where the party "had ceased using" the term and the trademark owner had sought voluntary dismissal of its trademark infringement claims); <u>cf.</u> <u>Green Edge Enters., LLC v. Rubber Mulch Etc., LLC</u>, 620 F.3d 1287, 1302-03 (Fed. Cir. 2010) (holding that a party's use of a term was insufficient to give rise to a case or controversy even where another party had been sued by the trademark owner for the use of the same term) ("Presumably, if Green Edge had wanted to sue Rubber Resources for trademark infringement, it could have

-27-

included that claim in the existing suit [for patent
infringement]").

　　　　Sandwich Isles cites authority in favor of the
proposition that as a competitor in the market for coffee-berry
products, it may challenge VDF's trademarks on the grounds that
they are generic or descriptive. (Opp'n at 32-34.) But the
authority concerns administrative petitions to cancel trademarks
under 15 U.S.C. § 1064. There is no case or controversy
requirement for such petitions, so the authority is inapposite.
See Ritchie v. Simpson, 170 F.3d 1092, 1094 (Fed. Cir. 1999)
("'[C]ase' and 'controversy' restrictions for standing do not
apply to matters before administrative agencies and boards, such
as the PTO.") As the Federal Circuit has stated:

> Section 14(c) of the Lanham Act [i.e., 15
> U.S.C. § 1064] does authorize persons
> interested in using marks that have become
> the common descriptive names of articles to
> petition the Patent and Trademark Office to
> cancel registration of those marks. It does
> not, however, authorize suits for
> cancellation in district courts.

Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 758 (Fed. Cir.
1987) (emphasis added). It may well be that Sandwich Isles can
file an administrative petition to have VDF's trademarks
cancelled. It cannot, however, achieve that result in this court
via an action for declaratory relief, unless it can show that
there is an actual case or controversy. The instant counterclaim
fails to make that showing.

As for Count V of the counterclaim, 15 U.S.C. § 1119 grants courts authority to cancel trademark registrations "[i]n any action involving a registered mark."  But given that the court lacks jurisdiction over Count IV of the counterclaim because there is no actual case or controversy, and that the complaint against Sandwich Isles does not include a trademark infringement claim, there is no pending "action involving a registered mark," so the Court has no authority under § 1119 to cancel VDFs trademarks.  As the Federal Circuit has stated:

> Under the Lanham Act, district courts have the power to cancel registrations, but only in an "action involving a registered mark." "Involving" cannot mean the mere presence of a registered trademark, but must be read as involving the right to use the mark and thus the right to maintain the registration. There must, therefore, be something beyond the mere competitor status of the parties to serve as a basis for the court's jurisdiction.  Such a basis may, for example, be a suit for trademark infringement, or a "case of actual controversy" referred to in the Declaratory Judgment Act.

Windsurfing Int'l, 828 F.2d at 758–59 (citations omitted).

In summary, for the reasons stated above, both Count IV and Count V of Sandwich Isles's counterclaim are DISMISSED.

**D.**        **State Law Claims**

As stated above, Counts VI, VII, and VIII of Sandwich Isles's counterclaim are affirmative claims under Hawaiʻi state law for, respectively, "tortious interference with existing contracts and prospective business advantage"; "unfair methods of

competition in violation of Haw. Rev. Stat. § 480-2"; and "unfair and deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3." The parties agree that these claims are preempted absent allegations that state law was violated in bad faith. (Opp'n at 22 (citing <u>Zenith Elec. Corp. v. Exzec, Inc.</u>, 183 F.3d 1340, 1355 (Fed. Cir. 1999)); Reply at 25 (citing <u>Zenith</u> and <u>Globetrotter Software, Inc. v. Elan Computer Grp., Inc.</u>, 362 F.3d 1367, 1374 (Fed. Cir. 2004)).) As VDF quoted in its motion:

> This "bad faith" standard has objective and subjective components. The objective component requires a showing that the infringement allegations are "objectively baseless." The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith. Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent.

<u>800 Adept, Inc. v. Murex Securities, Ltd.</u>, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

The Court finds that the state claims are partially derivative of the claim for inequitable conduct. (<u>See, e.g.</u>, Opp'n at 31-32 ("For example, SITC contends that VDF contacted its customers and [threatened] infringement lawsuits despite having procured the '205 Patent through inequitable conduct.").) As that claim is insufficiently pleaded, <u>see</u> <u>supra</u> Part III.A, the state law claims fail to the extent that they rely on it.

Setting aside the claim of inequitable conduct, all that remains are allegations that VDF informed other parties of its intellectual property and associated rights. This conduct, as pleaded in the counterclaim, does not constitute bad faith, either objectively or subjectively. <u>See</u> <u>supra</u> Part III.B.

The state law claims, Counts VI, VII, and VIII, are therefore DISMISSED.[4/]

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES Counts IV, V, VI, VII, and VIII of Sandwich Isles's counterclaim. The Court also DISMISSES Count II of that counterclaim to the extent that it relies on claims that VDF obtained its patents through

---

[4/] The Court by this holding does not intend to imply that Counts VI, VII, and VIII would state claims upon which relief could be granted if only there were sufficient allegations of bad faith. It does appear that Count VI, given sufficient allegations of bad faith, might be sufficient under Rule 8 to state a plausible claim for tortious interference with prospective business advantage. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1950; <u>Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel</u>, 151 P.3d 732, 748 n.18 (Haw. 2007) (setting forth the elements of that claim); (Am. Countercl. ¶¶ 28, 54, 86–90). But the remainder of the state-law claims are infirm. For example, Count VI fails to state a claim for tortious interference with contractual relations because, at least, the counterclaim fails to allege that any contract has actually been breached. <u>See</u> <u>Kahala Royal</u>, 151 P.3d at 748 n.17. Counts VII and VIII contain little more than a "formulaic recitation of the elements of a cause of action" and do not give VDF "fair notice" of what the "claim is and the grounds upon which it rests"; they are therefore insufficient to state a claim under Rule 8(a). <u>Twombly</u>, 550 U.S. at 555. And all three of the counts fail to state claims with sufficient particularity under Rule 9(b) to the extent that they rely on allegedly fraudulent conduct.

inequitable conduct or misused its patents.  These counts are dismissed WITHOUT PREJUDICE, and Sandwich Isles is GRANTED LEAVE to file an amended counterclaim correcting the deficiencies noted in this order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 27, 2011.



_____
Alan C. Kay
Sr. United States District Judge

VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co., Civ. No. 11-00288 ACK-RLP: Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss in Part Defendant's Counterclaim